SERVED ON SEPTEMBER 15, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X----------------------------------------------------------X
FRANCO MEDINA, INDIVIDUALLY AND ON
BEHALF OF THOSE SIMILARLY SITUATED,

                 Case No.: 1:16-cv-01407-NGG-JO

  Plaintiffs,

    v.

RICARDOS MECHANICAL, INC., EDISON MOORE,
LUANN WILLIAMS MOORE,

  Defendants.
X----------------------------------------------------------X

## MEMORANDUM OF LAW

  Defendants, RICARDOS MECHANICAL, INC., EDISON MOORE, and LUANN WILLIAMS MOORE ("Defendants"), pursuant to Fed. R. Civ. P. 56, file the following memorandum of law in support of their cross-motion for partial summary judgment dismissing Plaintiff's claims for retaliation and for overtime based on the time he spent commuting, and as grounds state:

  **I. FACTUAL BACKGROUND**

  Plaintiff was hired to work as a heating, air conditioning, and ventilation ("HVAC") technician, on or about May 18, 2015, paid at a rate of $20.00 per hour. From the beginning, Plaintiff had problems at work. There were certain tasks that had been expected of him, which he was unable to perform without considerable assistance from Edison Moore ("Mr. Moore"). Ex. A, 21:18-25, 19:2-10.  As a result, Plaintiff would send text messages with photographs of the system to Mr. Moore for guidance.  Ex. B. Defendant LuAnn Williams Moore ("Ms. Moore") felt that

Plaintiff had misrepresented his qualifications. P. Ex. 4, 81:21-23. It was as a result of this that Defendants decided that, rather than lower his hourly rate of pay to be more in line with his abilities, they would continue to pay him $20.00 for all hours worked, including any hours over 40 in a week. P. Ex. 4, 81:13-25, 14:2-22.

In addition, Plaintiff was often late, or unable to come to work for various reasons. Amy Lovaglio ("Lovaglio"), who handles human resources matters for Defendants, heard him denigrating his employer to employees of a supply warehouse. P. Ex. 5, 18:13-25, 19:3-18. He made comments to both Lovaglio and Mr. Moore about not wanting to work anymore. *Id.*, 92:8-23. Multiple customers complained about his appearance and hygiene, attitude and behavior, as well as his job performance, including leaving the heat on and flooding another business below his job site. Ex G, 151:25, 152:2-3, P. Ex. 6, 88:24-25. Ex. B, 214. Ex. C, Bates. 190. Some customers demanded that Plaintiff never again be sent to work at their businesses. Ex. G, 136:13-25, 137:2-10. He was involved in three accidents with the company vehicle, and damaged an expensive company cell phone to the point that it was rendered useless. Ex. A, 22:25, 23:2-13, 31:17-19. Ex. G, 154:3-12.

Plaintiff used a company vehicle, but was not required to use it every day. It was not "part of his job to have the van every day." P. Ex. 6, 42:12-24, 44:4-12. Mr. Moore testified, "There were days when I would tell him he could go straight to the job site but he would choose to come for the vehicle." P. Ex. 6, 44:23-25.[1]

Because the company vans are commercial vehicles, they cannot be parked on the street overnight. P. Ex. 6, 50:23-25, 51:2-4. As soon as Plaintiff was hired, Lovaglio conducted a search for available parking within a short walking distance from Plaintiff's residence, and found "about

---

[1] Obviously, when Plaintiff was driving the company vehicle, he was not using his own gas or putting miles on his own vehicle, a benefit to Plaintiff.

6 possible places," for which Defendants would have paid. P. Ex. 5, 103:20-25. P. Ex. 6, 41:21-25, 48:18-24, 49:24-25, 50:2-25, 51:2-4. Ex. D. Plaintiff, however, declined to park the company vehicle near his residence, and instead opted to have Defendants park it at their home because it was more convenient for him. P. Ex. 4, 7:13-16, 12:2-3. P. Ex. 5, 103:5-19, 25; 104:3-4, 105:10-20. P. Ex. 6, 41:21-25, 42:2-19. Plaintiff told Defendants that it would be easier for him to drop off his children in the morning and then pick up the vehicle from Defendants' home before continuing to his first job site of the day. P. Ex. 6, 41:7-12.

In the winter of 2015-2016, Plaintiff was experiencing significant personal problems, including illnesses suffered by members of his family and domestic violence charges brought by his children's mother, which resulted in his arrest and which prevented him from having contact with her or their children. As a result, Plaintiff's attitude and performance at work suffered. On February 24, 2016, Plaintiff was kicked off a job site by the General Contractor for insubordination and as a result, only worked until 11 a.m. that day. The General Contractor called Mr. Moore to report the incident. Ex. E, 57:7-25, 58:2-9. P. Ex. 17, Bates 281. Mr. Moore texted Plaintiff to take the next day off. Plaintiff thanked Mr. Moore for the opportunity. Ex. B, Bates 213.

Plaintiff texted Mr. Moore to ask if he should look for another job. Based on their previous conversations about the difficulties Plaintiff was experiencing, Mr. Moore responded that he thought it would be a good idea to do so. It was Mr. Moore's expectation that Plaintiff would continue working for Defendants while he searched for a new job. Ex. E, 59:12-25, 66:4-25, 67:2-25, 68:2-25, 69:2-14,

Plaintiff responded by text, "I'm guessing that a terminnation [*sic*] … Via text..." Ex. B, Bates 214. Mr. Moore responded that he was not authorized to fire anyone, but that Plaintiff should contact Ms. Moore or Lovaglio regarding his work status. Ex. B, Bates 215. Lovaglio was on

vacation at the time, but when she became aware of what had happened, she texted Plaintiff on Friday saying she hoped "all is OK" and asked him to speak to her on Monday when she was back in the office. Ex. F, Bates 216. When Lovaglio returned to the office on Monday with no further communication from Plaintiff, she concluded that he did not intend to return to work. P. Ex. 5, 95:8-25, 96:2-21. She texted him again the Monday she returned to work to say she was sorry he decided to leave, to which Plaintiff responded, "sorry I was terminated." Ex. F, Bates 217. Lovaglio reminded Plaintiff, as had Mr. Moore, that only she or Ms. Moore could fire anyone. Ex. F, Bates 218.

The law and the evidence demonstrates that Plaintiff cannot state a claim for retaliation, where there was no adverse employment action, and that he is not entitled to be paid for his commuting time. Accordingly, Defendants' motion for partial summary judgment should be granted.

## II. LEGAL STANDARD UNDER FED. R. CIV. P. 56

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322… (1986). A fact is material when it "might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248… (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *See id*. …It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*., 613 F.3d 336, 340 (2d Cir.2010). If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. *Celotex* … at 323[]. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. *Anderson* … at 249–50[]. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise

4

insufficient; there must be evidence on which the jury could reasonably find for him. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir.2004).

*Tompkins v. City of New York*, 50 F. Supp. 3d 426, 432–33 (S.D.N.Y. 2014) (Briccetti, J.) (string citations omitted).

A factual issue, "created solely by an affidavit crafted to oppose summary judgment" cannot create a "genuine" issue for trial sufficient to defeat a motion for summary judgment. *See Hayes v. New York City Dep't. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996). *See also Moll v. Telesector Res. Grp., Inc.,* 760 F.3d 198, 201 (2d Cir. 2014) (referring to this as the "sham issue of fact" doctrine). "At the summary judgment stage, [the plaintiff] is required to present admissible evidence in support of his allegations and allegations alone are not sufficient to defeat summary judgment." *Censor v. ASC Techs. of Connecticut, LLC*, 900 F. Supp. 2d 181, 216 (D. Conn. 2012).

### A. Plaintiff Is Not Entitled to Overtime Compensation for Time Spent Commuting

Plaintiff asserts that he should have been compensated, at a rate of 1.5 times his regular hourly pay for all the time he spent commuting to and from his job site at the start and end of each day, based on the fact that he used a company vehicle to commute. As a well-established Second Circuit precedent, Plaintiff is wrong.

> Congress passed the Portal–to–Portal Act of 1947, 29 U.S.C. § 251 et seq., which narrowed the FLSA's coverage by providing that compensable work does not include: (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. 29 U.S.C. § 254(a).

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 359 (2d Cir. 2011) (rejecting "continuous workday" theory advanced by plaintiff). The Department of Labor defines the workday as "the period between the commencement and completion on the same workday of an employee's principal

5

activity or activities." *Id*. "The Portal–to–Portal Act exempts employers from compensating employees under the FLSA 'for or on account of' time spent 'traveling to and from the actual place of performance of the principal activity or activities' of employment and any activities which are 'preliminary to or postliminary to said principal activity or activities.' 29 U.S.C. § 254(a)." *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008). "Accordingly, while employees need not be compensated 'for or on account of' commuting to and from work, they must be compensated for any work performed during a commute that is 'integral and indispensable' to a principal activity of their employment. *See Reich v. N.Y. City Transit Auth*., 45 F.3d 646, 651 (2d Cir.1995)." *Id*. Plaintiff does not claim to have been performing any activity for the benefit of his employer while he was driving. He was simply traveling from Point A to Point B.

Plaintiff was compensated from his arrival at his first work location of the day, whether that was a warehouse to pick up materials, or whether it was a service call. Plaintiff was not compensated for driving, nor was he legally required to be. Plaintiff chose to drive his own vehicle to the Moores' home, where he would leave it, pick up the company vehicle, and then continue on to his first work assignment each day. P. Ex. 4, 20:2-11. Plaintiff was not required to do any work when he arrived at the Moores' home to pick up the company vehicle. He simply got in and turned the key. Ex G, 154:13-19. He was no more entitled to be paid for that part of his commute that included his driving the company vehicle than he would have been if he drove his own vehicle the entire way, or if he had made his commute using public transportation. His "gotcha" argument, that if Defendants did not want to be liable to pay for his commute, they should have mandated that Plaintiff accept their free parking near his home, is legally baseless. P. Mem. p. 15.

Nor does the fact that Plaintiff may have been transporting tools or other equipment required for the performance of his job inside the company vehicle while he was driving transform

that driving time into compensable work, as held by the Second Circuit. Applying the "primary benefit test, the court held that "[c]arrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. Whether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered. While the City certainly benefits from the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time." *Singh*, 524 F.3d at 368–69.

Plaintiff would have had to travel somehow to his first work location of the day, regardless of whether he was driving his own vehicle, the company vehicle, a family member's vehicle, or taking public transportation. The means by which Plaintiff traveled to his first work location of the day does not change the analysis, particularly where Plaintiff affirmatively declined the opportunity to have the company vehicle parked near his home at no cost to him. Plaintiff is no more entitled to be paid from the moment he turned the key in the ignition because the vehicle was parked in the Moores' driveway than he would have been if the vehicle was parked in a lot a few blocks from his own home. The fact that Plaintiff chose to split his travel time between two vehicles makes no legal difference. "The general rule, however, is and always has been that the FLSA does not treat ordinary home-to-job-site travel as compensable. The regulations have reflected this fact for at least fifty years, instructing that "[n]ormal travel from home to work is not worktime." 29 C.F.R. § 785.35; 26 Fed.Reg. 190, 194 (Jan. 11, 1961)." *Kuebel*, 643 F.3d at 360.

Indeed, the Second Circuit noted that to conclude otherwise would be "groundbreaking." *Singh*, 524 F.3d at 369–70 ("In deciding this case, we note the practical consequences of the plaintiffs' challenge. Ruling in their favor could have a wide-ranging impact, suddenly imposing upon businesses across the country a liability to compensate employees anytime those employees

7

must commute to work with important documents, tools, or communications devices. In the sixty years following the Portal–to–Portal Act, we are unaware of any court that has required employers to pay employees for otherwise non-compensable commuting time simply because employees must travel with a briefcase or a small toolbox or a handheld device in order to be prepared for the workday. We are not convinced that the facts in this case warrant such groundbreaking law."). The Second Circuit reaffirmed this rational a year after *Singh* in *Clarke v. City of New York*, 347 F. App'x 632, 634 (2d Cir. 2009), holding that "[t]ransporting a bag in a car trunk, or at plaintiffs' feet on a train or bus, allows them to use their commuting time as they wish. To the extent that the bag adds time to their commute, we find, just as in Singh, that such time is de minimis and non-compensable." So too with the tools and equipment transported by Plaintiff in the company vehicle. He is not entitled to be paid for his commute.

### B. Plaintiff's Claim for Retaliation Fails based on His Own Testimony

In the Complaint, Plaintiff alleges that he was retaliated against, in violation of the FLSA and NYLL, for having "complained about his employer's improper pay practices and non-payment of wages and overtime." DE #1, ¶56-57. However, as his own testimony, and that of Defendants, demonstrates, Plaintiff never complained about overtime, or any alleged improper pay practices. Moreover, Plaintiff was not fired, but simply failed to return to work, so there was no retaliatory adverse employment action. Ex. G, 140:7-12, 143:14.

> FLSA provides that it is "unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [FLSA]." 29 U.S.C. § 215(a)(3). FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir.1988). Thus, a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected

8

activity and the adverse employment action. *See Cruz v. Coach Stores, Inc*., 202 F.3d 560, 566 (2d Cir.2000). An employment action disadvantages an employee if "it well might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s]....'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted).

*Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (string citations omitted).[2]

Moreover, as to the causation element, although the Second Circuit has not affirmatively ruled on application of "but for" causation in an FLSA context, this Court, applying the rationale of other lower courts, has done so. *See Aponte v. Modern Furniture Mfg. Co., LLC,* 2016 WL 5372799, at *16 (E.D.N.Y. Sept. 26, 2016) (Spatt, J.) (collecting cases). If a plaintiff is able to establish a prima facie case of retaliation, the burden then shits to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. Upon a showing of such a reason, the burden then shifts back to the employee to demonstrate that the proffered reason is a pretext for retaliation.

In this case, Plaintiff can neither establish a prima facie case of retaliation, having failed to engage in any protected activity, nor can he establish an adverse employment action, insofar as he was not terminated. Even if he was terminated, Defendants had plenty of legitimate, non-discriminatory reasons to do so, and Plaintiff can hardly argue that any such reason was a pretext.

---

[2] The standard applied to retaliation claims under the NYLL is largely the same.

> To establish a prima facie case of retaliation under this provision, a plaintiff must be able to show that, "while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F.Supp.2d 342, 347 (E.D.N.Y.2007) [Spatt, J.]. Further, there must be "a nexus between the employee's complaint and the employer's retaliatory action." *Id.*; *see also Quintas v. Pace Univ*., 23 A.D.3d 246, 804 N.Y.S.2d 67, 68 (1st Dep't 2005). Once the plaintiff establishes a prima facie case of retaliation under Section 215, the burden shifts to the defendant to produce evidence suggesting that it had a legitimate, non-retaliatory explanation for its actions. *See Lin v. Great Rose Fashion, Inc*., No. 08–cv–4778 (NGG)(RLM), 2009 WL 1544749, at *17 (E.D.N.Y. June 3, 2009). The plaintiff must then persuade the finder of fact that the proffered explanation is pretextual. *See Copantitla v. Fiskardo Estiatorio, Inc*., 788 F.Supp.2d 253, 302 (S.D.N.Y.2011).

*Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 238–39 (S.D.N.Y. 2013).

The Supreme Court held in *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011), that "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Plaintiff's own description of his alleged complaints about his pay makes clear that he was not asserting any rights provided by the FLSA or NYLL.

Notwithstanding Plaintiff's admission that Mr. Moore, Ms. Moore, and Lovaglio all told him that Mr. Moore did not have the power to fire him (Ex. A, 53:9-25, 54:2-3), Plaintiff's retaliation claim hangs on his assertion that a text message from Edison Moore was a termination. Ex. B, Bates 214. However, Ms. Moore testified that Plaintiff was not terminated, and had been instructed to return to work and that if he had done so, he would have been disciplined for misconduct, but not fired. P. E. 4, 49:18-25. Mr. Moore testified that, based on an in-person conversation they had recently had, he understood that Plaintiff was having personal difficulties that made him disinterested in continuing to work. Therefore, when Plaintiff sent a text asking whether he should look for another job, Mr. Moore replied that he should. Mr. Moore testified that it was not his intention to terminate Plaintiff's employment, and indeed that he does not have the power to do so, but rather that he was agreeing that it made sense for Plaintiff to begin looking for another job, while he continued to work for Defendants. He testified that "we still need for you to perform your duties." Ex. E, 65:20-25, 66:2-25, 67:2-25, 68:2-14, 71:5-6. Plaintiff apparently interpreted the exchange differently, and argues that, by negative inference, since no one specifically told Plaintiff he was not fired, then it stands to reason that he was fired. Plaintiff is wrong.

Even if Plaintiff was fired, it was not in retaliation for any protected activity. Indeed, Plaintiff testified that he did not engage in any protected activity, but instead complained that he wanted a raise, and wanted to work fewer hours. "I asked for a little bit more money and the hours…They were too long." Ex. A, 41:19-25, 42:2-12, 45:8-12.[3] He did not complain that he was not paid overtime, or that he was otherwise improperly paid. Ex. E, 98:7-11.

General complaints about pay or other working conditions are insufficient under the law to serve as a basis upon which to assert a retaliation claim. *See e.g., Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d Cir. 2017) ("complaining about having to use accumulated sick days or personal days to cover an unexcused absence is [not] a valid assertion of FLSA rights by a non-covered employee such that a reasonable person would have understood it to put an employer on notice as an assertion of rights under the FLSA."). *See also Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110 (S.D.N.Y. 2015) (dismissing retaliation claims premised on oral complaints where "such complaint, however, put [defendant] on notice only that Dunn believed she had not been paid what her employer had promised. Dunn did not thereby assert a violation of the FLSA, or even suggest that she might be doing so.").

Finally, even if Plaintiff was fired, there was clearly a legitimate, non-discriminatory reason for doing so. Both individually named Defendants as well as Lovaglio testified to Plaintiff's deficiencies as an employee. Plaintiff was unable to perform tasks expected of him without assistance from Mr. Moore. P. Ex. 6, 74:8-24. Ex. B, Bates 214. Customers complained about him. Ex. B, Bates 214. Ex. C, Bates 190. He broke an expensive work telephone and was admittedly involved in multiple accidents with the work van he used. Ex. A, 22:25, 23:2-13. His driver's license was suspended on more than one occasion (a necessary requirement of his job)

---

[3] Moreover, Plaintiff testified that in response to his request for fewer hours, Mr. Moore replied that Defendants needed him because they were busy. Ex. A, 42:16-18.

11

and he had to regularly miss work for court dates and other obligations stemming from domestic violence charges. P. Ex. 4, 56:15-19. P. Ex. 6, 46:12-25. If Defendants had intended to terminate Plaintiff, they had ample legitimate reason to do so.

Plaintiff cannot state a prima facie case of retaliation under either the FLSA or the NYLL. There was no protected activity, based on his own testimony. Even Plaintiff's self-serving declaration contains no allegations of any protected activity. Moreover, contrary to Plaintiff's interpretation of his text message exchange with Mr. Moore, it was never Defendants' intention to fire him, and no one did. P. Ex. 4, 57:8-22. Even if they had, there were plenty of legitimate, non-discriminatory reasons to do so, and Plaintiff cannot possibly demonstrate that any such reason was merely a pretext. Accordingly, summary judgment should be granted dismissing Plaintiff's claim for retaliation.

## III. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's overtime claims premised on his commuting time, as well as his retaliation claims.

Respectfully Submitted,

**Law Offices of Nolan Klein, P.A.**
*Attorneys for Defendants*
347 West 36th Street, Suite 805
New York, NY 10018
PH:    (646) 560-3230
FAX:   (877) 253-1691

By:  */s/ Valerie K. Ferrier*
 VALERIE K. FERRIER, ESQ. (VF0209)
 ferrier@nklegal.com
 NOLAN KLEIN, ESQ. (NK4223)
 klein@nklegal.com
 amy@nklegal.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing instrument was e-mailed to the below named recipient, this **15th** day of **September,** 2017.

By: */s/ Valerie K. Ferrier*
Valerie K. Ferrier, Esq.

## **SERVICE LIST:**

**JORDAN EL-HAG, ESQUIRE**
(JE3360)
777 Westchester Ave., Ste. 101
White Plains, NY 10604
TEL: (914) 755-1579
FAX: (914) 206-4176
**jordan@elhaglaw.com**
*Attorney for Plaintiff*