D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FRANCO MEDINA,

                   Plaintiff,

      -against-

RICARDOS MECHANICAL, INC.; EDISON MOORE;
and LUANN W. MOORE,

                  Defendants.
------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**16-CV-1407 (NGG) (JO)**

     Plaintiff Franco Medina brings this action against Defendants Ricardos Mechanical, Inc.

("Ricardos"); Edison Moore ("Moore"); and Luann Williams Moore ("Williams"). (Compl.

(Dkt. 1).) Plaintiff seeks to recover for violations of the overtime-compensation, wage-notice,

retaliation, and wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et

seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 215.

     Plaintiff now moves for summary judgment as to the overtime-compensation, wage-

notice, and wage claims, as well as the question of whether both Williams and Moore are

"employers" for the purposes of the FLSA. (Pl. Mot for Summ. J. (Dkt. 37); Pl. Mem. in Supp.

of Mot. for Summ. J. ("Pl. Mem.") (Dkt. 37-2).) Defendants cross-move for summary judgment

on the overtime-compensation, wage-notice claim, and retaliation claims. (Defs. Mot. for

Summ. J. (Dkt. 37-37); Defs. Mem. in Supp. of Mot. for Summ. J. ("Defs. Mem.") (Dkt. 37-27)).

For the reasons that follow, the court GRANTS IN PART and DENIES IN PART Plaintiff's

motion for summary judgment and GRANTS IN PART and DENIES IN PART Defendants'

motion for summary judgment. The court DENIES Plaintiff's motion as to the overtime-

compensation claims, wage-notice claim, and wage claims; GRANTS Plaintiff's motion as to Williams's status as an employer; and DENIES Plaintiff's motion as to Moore's status as an employer. The court GRANTS IN PART and DENIES IN PART Defendants' motion as to the overtime-compensation claims; GRANTS Defendants' motion as to the wage-notice claim; and GRANTS Defendants' motion as to the retaliation claims.

## I.    BACKGROUND

### A.    Facts

Plaintiff worked for Ricardos, a company that services commercial and residential heating and cooling systems, from May 18, 2015, until February 24, 2016. (Defs. Resp. to Pl. Local Rule 56.1 Statement ("Defs. 56.1") (Dkt. 37-25) at 2.) Plaintiff's role included installing, servicing, and transporting the systems. (Compl. ¶ 11.) Williams owned the company, while Moore led the operation of the heating and cooling systems. (Defs. 56.1 at 4-5.) Plaintiff would drive in his own car to company headquarters, where he would pick up a company work van. (Id. at 17.) He would then drive the van to his first work site in the morning, and he would return the van to company headquarters in the evening. (Id.) Although Ricardos offered to pay for Plaintiff to park the van near his home, Plaintiff declined the offer, and instead chose to retrieve the van from the company headquarters each day. (Dep. of Amy Lovaglio (Dkt. 37-8) at 103-05; Dep. of Moore (Dkt. 37-9) at 41-42.)

Although there were some days when the van and its tools were not necessary for the day's work at the work site, on at least some days, the van and its tools were necessary for him to perform his job at the work site. (Dep. of Ricardos (Dkt. 37-7) at 20-22.) However, when he did not need the tools, he was free to proceed to work sites directly from his house. (Dep. of Williams (Dkt. 37-7) at 20-22; Dep. of Moore at 44-45.) On days when he did need to pick up

the van, stopping to retrieve it added no time to his commute. (See Pl. Mem. at 17.)

According to Plaintiff, he began to complain early on to his employers about the non-payment of overtime. He claims he "complained that his hours were wrong" (Medina Decl. (Dkt. 37-11) at 3), complained about the lack of overtime compensation (Williams-Medina Text Messages (Dkt. 37-22)), and complained about working longer hours than originally agreed upon (Dep. of Medina (Dkt. 37-29) at 42, 43). Plaintiff claims these complaints led to Ricardos terminating him. Defendants, however, have also produced a volume of evidence tending to show that Defendants had legitimate reasons to fire him. These reasons include the fact that Plaintiff misrepresented his skills at his job interview (Dep. of Moore at 13-15), and the fact that the company received complaints from customers about his performance (Medina-Ricardos Text Messages (Dkt. 37-30) at 10).

Following an apparent breakdown in the employer-employee relationship, Plaintiff's employment with Ricardos ended. It is unclear, however, whether Ricardos terminated Plaintiff. (Medina-Williams Emails (Dkt. 37-40) at 2.) Moore sent an initial text message suggesting that Ricardos would be terminating the relationship with Plaintiff, but this message contained the caveat that Moore did not have the power to terminate Plaintiff (Medina-Ricardos Text Message), and Plaintiff acknowledges that Moore did not have the power to terminate him (Dep. of Medina at 53). A later email exchange between Plaintiff and Williams—who did have the power to terminate him—was inconclusive, containing indications that Ricardos both was and was not firing Plaintiff. (Medina-Williams Emails at 2.)

**B.    Procedural History and the Complaint**

On March 22, 2016, Plaintiff brought this action against Defendants, alleging violations of the overtime-compensation, wage-notice, retaliation, and wage provisions of the FLSA and

the NYLL. (Compl.)

Having completed discovery, Plaintiff now moves for summary judgment as to the overtime-compensation claims, the wage-notice claim, and the general under-compensation claims, as well as the question of whether both Williams and Moore are "employers" for the purposes of the FLSA. (Pl. Mem.) Defendants cross-move for summary judgment on the overtime-compensation claims, the wage-notice claim, and the retaliation claims. (Defs. Mem.)

## II.    LEGAL STANDARD

A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (S.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the

4

truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III.    DISCUSSION

### A.    Unpaid Overtime

Plaintiff moves for summary judgment on his claims for unpaid overtime wages under the FLSA and the NYLL, and Defendants cross-move for summary judgment on these claims. (Pl. Mem.; Defs. Mem.)  The parties agree that Plaintiff used the company work van to commute to work sites each morning.  (See Defs. 56.1 at 17.)  The parties disagree, however, as to whether use of the van to commute is compensable as work.  Therefore, the issue to be addressed is whether that commute qualifies as work under the FLSA and the NYLL.  The court first addresses Plaintiff's claim under the FLSA, and it next addresses Plaintiff's claim under the NYLL.

### 1.    FLSA

Plaintiff argues that the employer must compensate him for any use of a company vehicle "naturally related and necessary" to the work. (Pl. Mem. at 21.)  As set forth in the Portal-to-Portal Act,[1] 29 U.S.C. § 254, and its interpreting case law, however, that is not the case.  This law states that normal commute time to a work site is not usually compensable, even when the

---

[1] The Portal to Portal Act is an amendment to the FLSA that articulates various clarifications of provisions in the FLSA.

employee commutes in a work vehicle. Exceptions do exist, however.

        a.    *Regulations*

Two federal regulations are relevant to the case at hand, both addressing circumstances when a commute transforms into compensable work under the FLSA. First, if labor performed before a commute supports the employees' "principal activity or activities," the commute becomes compensable. 29 C.F.R. § 790.6. Second, the regulations suggest, though the case law is less clear, that where an employer requires its employee to report to a third location (hereinafter a "waystation") after leaving his residence and before arriving at the work site—for instance, "to pick up and carry tools"—the time spent traveling from the waystation to the worksite can be compensable. 29 C.F.R. § 785.38.

Here, Williams, the owner of Ricardos, testified that Plaintiff did no labor upon picking up the van. (Dep. of Williams (Dkt. 37-35) at 13-19.) Plaintiff does not dispute this. Therefore, 29 C.F.R. Section 790.6 does not provide an exception in which Plaintiff's case falls.

The second regulation, 29 C.F.R. Section 785.38, however, states that a commute can be compensable from the time of a required reporting to a waystation, "to receive instructions,[2]" "to perform other work" or "to pick up and carry tools." 29 C.F.R. § 785.38. The workday, then, could begin at the required reporting time. Here, the parties agree that, on at least some days, Plaintiff needed the van and the equipment within it to perform work duties, but there is a dispute over how often this was the case. (Dep. of Ricardos at 20-22.) The parties dispute both the extent to which Plaintiff needed the van to carry the tools Defendants would use during the workday, and also how often Plaintiff had to load the tools into the van. (See Defs. 56.1 at 13.)

---

[2] While Plaintiff claims that Moore would give Plaintiff instructions when Plaintiff came for the van in the morning, there is no evidence for this claim in the record, and so the court will not consider this factor in its analysis. (Defs. 56.1 at 13.)

b.   *Case Law*

Even when tools are picked up at a waystation, the commute is not compensable unless

the act of picking up the tools is "integral and indispensable" to employment. See Reich v.

N.Y.C Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995). Courts, however, have interpreted and

applied the "integral and indispensable" rule in different ways—though the Second Circuit has

not yet addressed this specific topic. Courts that have addressed the topic have fallen into three

main camps:

First, some courts have held that reporting to a waystation triggers the workday without

requiring the employee to perform any work at that waystation. See, e.g., Meeks v. Pasco Cty.

Sheriff, 688 F. App'x 714, 717 (11th Cir. 2017) (holding that picking up a police patrol car

triggered the workday); Burton v. Hillsborough County, 181 F. App'x 829, 837 (11th Cir. 2006)

(holding that the workday was triggered by a county employer requiring employees to pick up

county vehicles with tools at secure work sites); Wilson v. PrimeSource Health Care of Ohio,

Inc., No. 16-CV-1298, 2017 WL 2869341, at *8 (N.D. Ohio July 5, 2017) (holding that a

meeting to carpool triggered the beginning of the workday).

A second set of cases suggests that carrying tools is per se compensable where the tools

are heavy, specialized, or difficult to transport. See, e.g., Crenshaw v. Quarles Drilling Corp.,

798 F.2d 1345, 1350 (10th Cir. 1986) (finding a compensable commute where employer

"provided [employee] with a specially equipped truck containing many of the tools that he

needed to service drilling rigs scattered across several states"); D A & S Oil Well Servicing, Inc.

v. Mitchell, 262 F.2d 552, 555 (10th Cir. 1958) (holding that the driving of pick-up trucks with

oil well servicing equipment was a compensable commute). While these two cases are not recent

ones, the principle that employers ought to compensate commutes when the employee hauls

heavy equipment continues to find support. See, e.g., Clarke v. City of New York, No. 06-CV-11397 (GEL), 2008 WL 3398474, at *7 (S.D.N.Y. June 16, 2008) (finding a triable issue of fact for plaintiffs who alleged that they carried heavy bags during their commute, but no triable issue for plaintiffs who alleged carrying only light bags).

The majority of cases, however, state that, in the context of picking up tools or equipment, the employee must actually load the tools onto the truck, or do other work, in order for the workday to begin. See, e.g., Pizano v. Big Top & Party Rentals, LLC, No. 15-CV-11190, 2017 WL 1344526, at *3 (N.D. Ill. Apr. 12, 2017) (holding commutes compensable where tools were loaded or unloaded, or where the employees performed clean up duties after returning from a job site); Hernandez v. NJK Contractors, Inc., No. 09-CV-4812 (RER), 2015 WL 1966355, at *26 (E.D.N.Y. May 1, 2015) (holding commutes compensable where "plaintiffs each spent approximately thirty minutes at the Shop in the morning and thirty minutes at the Shop in the evening."); Hajny v. Best Roofing of N.J., Inc., No. 11-CV-00173 (LLS), 2011 WL 2493737, at *3 (S.D.N.Y. June 22, 2011) (holding commutes compensable where plaintiffs received instructions and loaded tools at the waystation); Gonzalez v. Bustleton Servs., Inc., No. 08-CV-4703, 2010 WL 1813487, at *12 (E.D. Pa. Mar. 5, 2010) (holding commutes compensable where plaintiffs began the work day with ten minutes of truck loading and finished the day by taking debris to the dump); O'Brien v. Encotech Constr., No. 00-CV-1133, 2004 WL 609798, at *5 (N.D. Ill. Mar. 23, 2004) (holding commutes compensable where employees performed clean-up, equipment inspection, and other tasks essential to performance of the workday).

The court follows the majority position, according to which, in the case of picking up and carrying tools from a waystation, the ensuing commute is compensable when the employee needs to pick up the tools and also needs to perform at least some labor at the waystation—for

example, loading the tools into the van. The court adopts this position for two reasons. First, absent the tools needing to be picked up, the tools are not "integral and indispensable" to employment. See Reich, 45 F.3d at 651. Second, even if the tools themselves are "integral and indispensable" to employment, the court does not find it plausible that the mere picking up of a vehicle containing tools, without the need to load tools into the vehicle, renders the commute "integral and indispensable" to the workday—and thus compensable as work.[3] If the tools need not be loaded into the vehicle, the vehicle could potentially instead be parked elsewhere, such as near an employee's home. In situations where this is the case, the commute from a waystation to a work site is not "integral and indispensable" to the workday.

      c.    *The Issues of Triable Fact*

Thus, Plaintiff's commute was compensable if (1) he needed the tools for work, and (2) he loaded the tools into the van. The facts of this case suggest that on some days the van and equipment were needed and on some days they were not. (Dep. of Ricardos at 20-22.) There is a dispute over how often this was the case. The facts also suggest that on some days Plaintiff loaded tools into the van and on some days he did not. It is not clear how often this occurred. Thus, both of these key issues raise questions of triable fact, and they thus are appropriately addressed at trial.

      2.    <u>NYLL</u>

As for Plaintiff's state law claims, courts have held that the NYLL does not differ from the FLSA as to the compensation of commutes. See, e.g., Beecher v. TWC Admin. LLC, No. 15-CV-00154, 2016 WL 11113685, at *6 (W.D.N.Y. Aug. 22, 2016). Therefore, the same fact

---

[3] Unlike according to the majority position, according to the first group of courts, the mere picking up of a vehicle containing tools, without the need to load tools into the vehicle, renders the ensuing commute compensable work, and, according to the second group of courts, doing so renders the ensuing commute compensable work as long as the tools are sufficiently heavy, specialized, or difficult to transport.

issues that exist as to the FLSA overtime-compensation claim also exist as to the NYLL overtime-compensation claim.

## B.  Under-Compensation Generally

Plaintiff alleges that, even apart from his time spent in the work van, Defendants generally under-compensated Plaintiff for the time he worked in the field, and that this occurred because Defendants miscalculated his working hours.  (See Pl. Mem. at 11-12.)  Although Plaintiff's arguments are vague as to whether he seeks compensation for "gap-time" (i.e., unpaid regular work hours), the court clarifies that the FLSA supplies a cause of action only for minimum wage and overtime violations, and not for lost gap-time.  See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 116 (2d Cir. 2013).  The court thus considers the overtime violations Plaintiff has alleged under 29 U.S.C. Section 207.

The Supreme Court has established a burden-shifting scheme for estimates of overtime compensation, as described in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946):  "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."

Plaintiff argues that, according to the Anderson rule, Defendants' records and recollections lose all evidentiary value if they are incomplete.  (See Pl. Mem. at 11-12.)  Plaintiff mischaracterizes the Anderson rule.  The case Plaintiff cites for the proposition that the court must fully credit a plaintiff's records where a defendant's records are under-inclusive involved

conflicting records adduced at trial, not on a motion for summary judgment. See Reich v. S. New Engl. Telecomm. Corp., 121 F.3d 58, 70 (2d Cir. 1997). Plaintiff likewise misinterprets Moon v. Kwon, 248 F. Supp. 2d 201, 218-20 (S.D.N.Y. 2002), where the court credited a plaintiff's testimony as to hours worked only after a bench trial and with strong corroboration of the evidence. It makes sense for the court to credit a plaintiff's records over a defendant's after fact-finding and weighing of evidence—not at the summary-judgment stage, when there is admissible evidence on both sides.

Outside of the trial context, the purpose of the Anderson burden-shifting scheme is to allow a plaintiff to survive a defendant's summary-judgment motion where the employer's records are incomplete. See Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011). A plaintiff is entitled to establish time worked by his own testimony when a defendant's records are inadequate, and a defendant's records on rebuttal must be sufficient "to negative the reasonableness" of plaintiff's estimate. Anderson, 328 U.S. at 688.

Here, Defendants submitted purportedly complete time records for both the normal hours Plaintiff worked ("Defendants' Hour Log Number 1") (Defs. Hour Log 1 (Dkt. 37-14) and overtime ("Defendants' Hour Log Number 2") (Defs. Hour Log 2 (Dkt. 37-20) for his entire tenure at Ricardos. Plaintiff has submitted a computation of damages based on his own recollection, putting him at 12.5 hours worked per day—a sum that, in most cases, was far above Defendants' claimed time for the same days. (Pl. Hour Log 1 (Dkt. 37-10).)

There are potential evidentiary problems with Defendants' documents. For one, Plaintiff argues that the time records in Defendants' Hour Log Number 1 are not business records. Although Plaintiff does not elaborate on the argument, the court takes him to mean that the document is inadmissible hearsay, as it does not fall under the hearsay exception for business

records in the Federal Rules of Evidence. Fed. R. Evid. 803(6). He might also have argued that the document, such as it is, violates the "best evidence rule," Fed. R. Evid. 1001, because Defendants rely upon the contents of a document which they do not produce in its original form. In addition, Plaintiff argues that Defendants failed to authenticate Defendants' Hour Log Number 2 during their depositions. If both of these records are inadmissible, then it would appear that Defendants have not brought forward any admissible evidence as to Plaintiff's work hours during long stretches of his employment, and there would be a plausible case for granting summary judgment to Plaintiff. However, instead of fully addressing these evidentiary problems, or asking for affidavits to authenticate the problematic documents, Plaintiff calls the credibility of these documents into question—an argument that is irrelevant on summary judgment, where the court does not judge credibility.

Whether or not the complete time records are admissible, Defendants can point to third-party paystubs for the period of October 2015 to February 2016 (see Medina Paystubs (Dkt. 37-17)), as well as some other sound, if limited, evidence. For instance, Defendants did keep accurate records for a span of nearly two weeks in January-February 2016. (Defs. Business Records (Dkt. 37-18).) Plaintiff's average workday for the thirteen days recorded during this period was 10.1 hours, as compared to Plaintiff's estimate of 12.5. Though the parties have not adequately briefed the issue of whether Defendants' main evidence on rebuttal is sufficient to "negative the reasonableness" of Plaintiff's estimates, Defendants' records are not so non-existent that the court is bound to credit Plaintiff's estimates without any fact-finding, especially absent sound arguments as to the admissibility of the evidence in question. Further, to the extent Plaintiff claims compensation for each one of his daily commutes, the estimate fails as a matter of law, for the reasons stated in Section III.A, supra. Therefore, summary judgment is

inappropriate on this point. There is an issue of fact as to how much compensation, if any, Defendants owe Plaintiff.[4]

### C. The Retaliation Claims

Plaintiff seeks to recover for violations of the retaliation provisions of the FLSA and the NYLL, and Defendants move for summary judgment on both claims. The court first addresses Plaintiff's claim under the FLSA, and it next addresses Plaintiff's claim under the NYLL.

#### 1. FLSA

Courts use the McDonnell Douglas burden-shifting scheme to assess retaliation claims at summary judgment. See Aponte v. Modern Furniture Mfg. Co., No. 14-CV-4813 (ADS), 2016 WL 5372799, at *15 (E.D.N.Y. Sept. 26, 2016) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). A plaintiff must first produce evidence to satisfy a prima facie case that (1) he participated in protected activity known to the defendant; (2) he suffered an adverse employment action; and (3) the protected activity was a "but for" cause of the termination. See id. If the employee satisfies the prima facie case, the employer must then show a legitimate non-retaliatory reason for the adverse employment action. See id. If the employer does so, the plaintiff must then produce sufficient evidence to support a rational finding that, "more likely than not," the reason given was a pretext for retaliation. See id. The court follows these steps in order to determine whether Plaintiff has satisfied his prima facie case, whether Defendants have rebutted the prima facie case with a non-retaliatory reason, and whether Plaintiff has, in turn, established pretext.

---

[4] Plaintiff also alleges violations of Section 191 of the NYLL for a failure to pay wages in a timely way. However, Plaintiff has provided only cursory arguments without citing case law, and Defendants do not seek summary judgment on this claim. Summary judgment is therefore inappropriate on this claim.

a.   *Protected Activity*

Defendants argue that, for a complaint to count as protected activity under the FLSA, the employee must make it formally to a government agency.  Defendants are plainly wrong on this count.  The Second Circuit now considers complaints to the employer to be protected activity. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015); see also Marcotte v. City of Rochester, 677 F. App'x 723, 726 (2d Cir. 2017).  But, under Supreme Court doctrine, the complaint must put the employer on notice of the violation of the labor law.  See Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011).

Vague complaints do not suffice for Kasten.  See, e.g., Baguidy v. Boro Transit Inc., 283 F. Supp. 3d 14, 30 (E.D.N.Y. 2017) (holding a complaint insufficient to put defendant on notice of a violation, where plaintiff merely complained to a manager "about shortages in his pay roll"); Robledo v. No. 9 Parfume Leasehold, No. 12-CV-3579 (ALC) (DF), 2013 WL 1718917, at *6 (S.D.N.Y. Apr. 9, 2013) (holding that raising questions and concerns about how wages were calculated was insufficient to put defendant on notice).  But see Lopez v. Advantage Plumbing & Mech. Corp., No. 15-CV-4507 (AJN), 2016 WL 1268274, at *2 (S.D.N.Y. Mar. 31, 2016) (holding that employers were on notice where plaintiff complained "vigorously" about overtime and missing hours).

Plaintiff, in his declaration, says that he "complained that his hours were wrong." (Medina Dec. at 3.)  This complaint is indistinguishable from the complaints found insufficient in Baguidy and Robledo.  Plaintiff further alleges that a text message he sent to Williams on June 8, 2015, contains an overtime complaint.  (Williams-Medina Text Message.)  It does not.  The alleged complaint is in fact an inquiry:  "I never ask how does the overtime go." (Id.)  Likewise, in his deposition, Plaintiff claims that he asked for a raise, and that he said that his hours were

"longer than what he signed up for." (Dep. of Medina at 42, 43.) Asking for a raise is not a complaint, and working longer hours than originally agreed upon is not even a violation of the labor law. Therefore, there was no protected activity, and Plaintiff has failed to satisfy his prima facie case.

Notwithstanding the fact that the court's inquiry into whether there was protected activity is dispositive for Plaintiff's retaliation claim, the court still will briefly address the other elements of the FLSA retaliation claim.

b. *Adverse Employment Action*

Assuming arguendo that Plaintiff had made a legally cognizable complaint, did an adverse action ensue? The parties dispute whether Plaintiff was fired or whether he quit. Moore texted Plaintiff in a way suggesting that Ricardos would terminate Plaintiff, but with the explicit caveat that Edison himself did not have the power to terminate Plaintiff. (Medina-Ricardos Text Message.) This text, therefore, is not itself a termination, though it may tend to prove that there was a termination. Plaintiff explicitly acknowledged in his deposition that this text did not operate as a termination. (Dep. of Medina at 53.) However, a later email exchange between Plaintiff and Williams could raise a fact issue as to whether or not there was a termination. In this exchange, Plaintiff first says he did not quit and asks for his start date and termination date. (Medina-Williams Emails at 2.) But Williams refused to provide a termination date, and she made clear that her company had not fired Plaintiff. (Id.) However, she then seemed to set conditions for Plaintiff's return to the company, though conceivably these might have been conditions for his staying with the company. (Id.) Plaintiff inquired again as to whether or not he had been terminated and Defendants never replied. (Id.) A reasonable jury could find that this email operated as a termination.

15

### c. *But-For Causation*

Assuming, again, that there had been a complaint, was it a but-for cause of the retaliation? On this point, Plaintiff offers an email from the owner of Ricardos that mentions—in a long list of other complaints about Plaintiff's performance—"compensation starting from your arrival at the first job site NOT the warehouse/van." (Id. at 2.) Plaintiff also offers this email to show pretext.

Defendants, however, have produced a volume of evidence tending to show that Defendants had legitimate reasons to fire Plaintiff. These reasons include the fact that he misrepresented his skills at his job interview (see Dep. of Moore at 13-15), and that the company received complaints from customers about his performance (see Medina-Ricardos Text Messages at 10).

Although it may appear scant in comparison to the volume of evidence that Defendants have produced, Plaintiff's employer did mention Plaintiff's possible complaint about overtime in an email that might have functioned as a termination. It is not the court's role to weigh evidence at the summary-judgment stage. From this email alone, a jury could conclude that Plaintiff's statements about overtime caused his termination, and that the other reasons given were pretextual.

In sum, because a reasonable jury could not find that Plaintiff engaged in a protected activity, the court grants Defendants' summary-judgment motion as to the FLSA retaliation claim.

### 2. NYLL

Courts commonly treat FLSA claims for retaliation and NYLL claims for retaliation identically. See, e.g., Aponte, 2016 WL 5372799, at *15; see also Torres v. Gristede's Operating

Corp., 628 F. Supp. 2d 447, 475 (S.D.N.Y. 2008). Plaintiff has not articulated any separate

standard for the NYLL retaliation claims and, as Defendants point out, courts apply the Kasten

standard for complaints to NYLL claims as well. See Kassman v. KPMG LLP, 925 F. Supp. 2d

453, 472 (S.D.N.Y. 2013). Therefore, as to the NYLL retaliation claim, the court grants Defendants'

summary-judgment motion.

### D. Wage-Notice Claims

Plaintiff and Defendants both move for summary judgment on Plaintiff's wage-notice claim

under NYLL Section 195 regarding inaccurate paystubs—though Defendants move in connection

with a Section 195(3) claim, whereas Plaintiff moves in connection with a Section 195(1) claim.

#### 1. Defendants' Motion

As for Defendants' motion regarding Section 195(3), they argue that Plaintiff has waived

his claims by failing to raise it in his complaint.

It is "well settled that a Court should not on summary judgment consider factual

allegations and legal theories not raised in the complaint." Lopez v. Gap, Inc., 883 F. Supp. 2d

400, 413 (S.D.N.Y. 2012). The Second Circuit has defined "fair notice" as "that which will

enable the adverse party to answer and prepare for trial, allow the application of res judicata and

identify the nature of the case so that it may be assigned the proper form of trial." Twombly v.

Bell Atl. Corp., 425 F.3d 99, 107 (2d Cir. 2005), rev'd on other grounds, 550 U.S. 544 (2007).

"The failure in a complaint to cite a statute, or cite the correct one, in no way affects the merits of

a claim. Factual allegations alone are what matters." Marin v. Apple-Metro, Inc., No. 12-CV-

5274 (ENV) (CLP), 2017 WL 4950009, at *5 (E.D.N.Y. Oct. 4, 2017) (report and

recommendation) (citing Townsend v. Benjamin Enters., 679 F.3d 41, 57 (2d Cir. 2012)).

Plaintiff did not raise any Section 195(3) claims in his complaint. Although Plaintiff

alleged a violation of "195," which could be generously construed to mean a violation of every

subsection of Section 195, Plaintiff also specified a "notice" violation. Only subsection 1 of Section 195 deals with such a "notice" violation. Indeed, it includes the word "notice" five times, as opposed to its being included zero times in subsection 3. Plaintiff then enumerates all of the information the employer must include in such a notice. While subsection 3 also contains a list of requirements, Plaintiff mentions none of them. Thus, the court concludes that Plaintiff did not raise the Section 195(3) claim in his complaint. The failure to cite the statute was not fatal, per <u>Townsend</u>, but Plaintiff failed to allege facts regarding inaccurate paystubs. Defendants could not have prepared their case with regard to the notice claims on any other basis but the subsection cited by Plaintiff. Therefore, the court will not consider any such claim now raised on summary judgment.

      2.   <u>Plaintiff's Motion</u>

Plaintiff also moves for summary judgment as to the properly pleaded and alleged claim under NYLL Section 195(1), alleging that Defendants did not provide a wage notice. In his summary-judgment motion, Plaintiff argues that Defendants did not produce a wage notice during discovery. In Defendants' Local Rule 56.1 Statement, Defendants cite to an exhibit in Plaintiff's papers that contains no evidence of a wage notice. (Defs. 56.1 at 16.)

This does not settle the question regarding Defendants' failure or non-failure to provide a wage notice. The difficulty is that Plaintiff must prove a case in the negative: that Defendants never provided a Section 195 notice. One court recently denied an employee's motion for summary judgment on similar facts, reasoning that not producing a wage notice at discovery would be consistent with having provided it. <u>See Sell It Soc., LLC v. Strauss</u>, No. 15-CV-970 (PKC), 2018 WL 2357261, at *15 (S.D.N.Y. Mar. 8, 2018); <u>cf.</u> <u>Jeong Woo Kim v. 511 E. 5th St., LLC</u>, 133 F. Supp. 3d 654, 663 (S.D.N.Y. 2015) (denying plaintiff summary judgment where defendant failed to produce notice at discovery, because defendant alleged in a deposition that he had

18

provided the notice). Another court granted a plaintiff's motion for summary judgment on a notice claim where the defendant failed to dispute plaintiff's contention that the defendant never provided a notice—and absent any countervailing evidence. See Almanzar v. C & I Assocs., Inc., 175 F. Supp. 3d 270, 279 (S.D.N.Y. 2016); see also Mattia v. Ferrara Foods & Confections, Inc., No. 12-CV-3972 (HB), 2013 WL 2339925, at *3 (S.D.N.Y. Apr. 18, 2013) (granting a plaintiff's motion for summary judgment where the defendant did not dispute the notice claim, and defendant testified in a deposition that he was not aware of the statute requiring the issuance of such notices).

While the court agrees with the Jeong Woo Kim court that alternative evidence such as testimony in a deposition might satisfy a defendant's burden of production in such a situation, the court does not endorse the reasoning of Sell it Social, which would seem to place the burden of production squarely on plaintiffs, punishing them for defendants' faulty record keeping. In such a situation, a defendant has an incentive to withhold or destroy evidence that it should be encouraged to produce and preserve. While, on the other hand, that might not be a substantial problem because plaintiffs may easily produce affidavits and deposition testimony tending to prove that a defendant failed to provide a wage notice, Plaintiff in this case has produced no such evidence.

In the court's view, it was incumbent upon Plaintiff to have developed such minimal evidence during discovery. In this case, neither side has provided evidence on the issue. As for Plaintiff's motion for summary judgment on the wage notice claims, the lack of evidence provided shows that Plaintiff has not met his burden of production. Accordingly, the court denies Plaintiff's motion for summary judgment as to Plaintiff's claim under Section 195(1).

### E.     Liability of Williams and Moore under the FLSA

Lastly, the court considers Plaintiff's motion for summary judgment as to whether Williams and Moore can be held individually liable under the FLSA. The court grants the motion as to Williams, but denies the motion as to Moore.

"To be held liable under the FLSA, a person must be an 'employer,' which § 3(d) of the

statute defines broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting 29 U.S.C. § 203(d) (1994)). The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. Falk v. Brennan, 414 U.S. 190, 195 (1973). "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer. In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." Herman, 172 F.3d at 139 (citations omitted). "Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (quoting Carter, 735 F.2d at 12). "No one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." Id. (citing Superior Care, 840 F.2d at 1059; Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

The parties do not dispute that Williams had the power to hire and fire employees, supervised and controlled them, determined their rate and method of payment, and maintained employment records on them. Therefore, summary judgment is appropriate as to Williams, and she may be held individually liable under the FLSA.

Defendants, however, deny that some of these factors accurately describe Moore's role at Ricardos. Therefore, the court analyzes the facts as to Moore more closely.

According to the record, Moore did not have the power to hire or fire employees. Defendants state that Moore "interviewed" and "recommended" the hiring of Plaintiff. (Defs. 56.1 at 5.) Making an inference in favor of the non-moving party, and absent further admissions or evidence on

this question, it is possible to conclude that Moore did not have the power to hire and fire employees. A person who merely recommends certain decisions most likely does not determine them.

Defendants admit in their Local Rule 56.1 Statement that Moore did have sole control over employee schedules. (Id. at 5.) They also admit that Moore had authority to determine the types of work Medina performed. (Id.)

Defendants further state that Moore would make wage recommendations to Williams. (Id. at 6.) Drawing an inference from this fact in favor of the non-moving party, and absent further admissions or evidence on this question, it is possible to conclude that Moore did not determine employees' rates of pay. Again, a person who merely recommends certain decisions most likely does not determine them.

Finally, Defendants state that Moore did determine overtime pay (id. at 5), but they provide no other facts as to whether or not Moore kept records.

With conflicting facts, and drawing inferences from Moore's limited power to recommend actions rather than determine them, a reasonable jury could conclude either that Moore was or was not an employer, and therefore summary judgment is inappropriate on this question.

In sum, the court grants Plaintiff's motion as to whether Williams can be individually liable under the FLSA, but it denies Plaintiff's motion as to whether Moore can be individually liable under the FLSA.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Plaintiff's motion for summary judgment (Dkt. 37) and GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment (Dkt. 37-37).  The court DENIES Plaintiff's motion as to the overtime-compensation claims and wage-notice claim; DENIES Plaintiff's motion as to the general under-compensation claims; GRANTS Plaintiff's motion as to Williams's status as an employer; and DENIES Plaintiff's motion as to Moore's status as an employer. The court GRANTS IN PART and DENIES IN PART Defendants' motion as to the overtime-compensation claims; GRANTS Defendants' motion as to the wage-notice claim; and GRANTS Defendants' motion as to the retaliation claim.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
   August 17 , 2018

NICHOLAS G. GARAUFIS
United States District Judge